SHIVERS, Judge.
In this workers’ compensation case, Boul-erice appeals the final order of the deputy commissioner which awards Boulerice 40% permanent partial disability (PPD). We agree with appellant that the deputy commissioner erred in finding claimant only 40% PPD. Therefore, we reverse and remand.
Boulerice suffered an accident in the course of his employment with Magic Roofing on April 28, 1978, when he fell from a one-story roof to the ground and sustained injuries to his head, fractures of both wrists and other injuries. Claimant’s average weekly wage at the time of his accident was $400 per week. Claimant is a 49 year old man with a sixth grade education. He has worked as a roofer his entire working life, 30 years, and has no other special training or skills. After the accident, claimant attempted to return to work with his brother in the roofing business for approximately three months in the fall of 1978, but he was unable to physically perform the job requirements and had to quit. He was paid $150 a week during this time. Claimant presently lives in Inverness, Florida and earns a living by using his tractor for odd jobs. He discs gardens, does some plowing, makes fire breaks, cuts grass and digs holes. For the past several years he has averaged approximately $100 per week doing this type of work. He has sold 32 acres of land that he previously owned in order to have an income to live on.
Boulerice filed his claim for further medical treatment, determination of maximum medical improvement (MMI) date, and PPD. Dr. Kneedy, a neurosurgeon, testified that claimant has a permanent physical impairment of 20% to 25% of the body as a whole due to the industrial accident. This rating took into account head injury, memo *45 ry loss and concussion, and carpal tunnel syndrome in both wrists and hands. Dr. Kneedy did not feel that claimant was able to continue as a roofer. Dr. Gilbert, a psychiatrist, testified that claimant had a post-concussion syndrome resulting in a 10% permanent disability of the body as a whole. Dr. Gilbert felt that claimant could not work at any job involving working on heights because of inability to maintain balance. Dr. Angelides, an orthopedist, testified that claimant had a 15% permanent disability of the right upper extremity and a 17% permanent disability of the left upper extremity resulting in a 20% permanent disability of the body as a whole. Dr. An-gelides stated that claimant reached MMI by December 7,1978.
The deputy commissioner’s order found that claimant reached MMI on December 7, 1978, sustained a 20% permanent disability of the body as a whole from an orthopedic basis, and rejected the psychiatric and neurological ratings. In determining claimant’s diminution of wage earning capacity, the deputy commissioner made specific findings concerning the criteria set forth in Walker v. Electronic Products & Engineering Co., 248 So.2d 161 (Fla.1971). One of these findings was that claimant’s average wage subsequent to the injury has been $100 per week, contrasted with his average weekly wage of $400 per week at the time of the industrial accident. The other Walker factors discussed were all limiting factors, i.e., none of the factors mentioned would tend to increase claimant’s wage earning capacity. Based on his findings, the deputy commissioner found claimant entitled to 40% PPD based on diminution of wage earning capacity.
Under section 440.15(3)(u), Florida Statutes (1977), disability means either physical impairment or diminution of wage earning capacity, whichever is greater. Diminution of wage earning capacity presumptively represents the difference between the injured employee’s wage earning capacity before and after the injury. Miller v. Ben’s Service Station, Inc., 417 So.2d 266 (Fla. 1st DCA 1982). Wage earning capacity before the injury is measured solely by the employee’s average weekly wage, which in the instant case was determined by the deputy commissioner to be $400 per week. In measuring the loss of wage earning capacity, no single factor is conclusive, but the deputy commissioner must measure the loss by the criteria announced in Walker, supra. In Walker, the court stated that the wage actually being earned after the injury is a factor entitled to great weight. In the instant case, the wages actually being earned after the injury were found by the deputy commissioner to be approximately $100 per week. Since the wages actually being earned by claimant after the injury represent a 75% reduction relative to claimant’s pre-accident average weekly wage, and since all the other Walker factors limit claimant’s wage earning capacity, claimant should have been found to be approximately 75% PPD. Even had the deputy commissioner found that $150 per week, earned by claimant for a few months in the fall of 1978, represented claimant’s wage earning capacity, this figure, compared with claimant’s $400 average weekly wage, would represent a greater than 40% diminution of wage earning capacity.
Based on the deputy commissioner’s own findings of fact, it appears that the deputy commissioner erred as a matter of law in calculating claimant’s PPD rating at only 40% based on diminution of wage earning capacity. Accordingly, the order appealed is REVERSED and this cause is REMANDED for the entry of a new order not inconsistent with this opinion.
ROBERT P. SMITH, Jr., C.J., and WIGGINTON, J., concur.